**Steven R. BECKER, Plaintiff,**

v.

**Gilbert ROSENBERG, Defendant.**

**No. 86 Civ. 9654 (DNE).**

United States District Court,
S.D. New York.

May 10, 1989.

MEMORANDUM & ORDER

EDELSTEIN, District Judge:

This is an action seeking to enforce a guaranty of a contract of sale of certain shares of stock. The parties have cross-moved for summary judgment. For the reasons set forth below defendant's motion is denied and plaintiff's motion is granted.

## BACKGROUND

Plaintiff and defendant were the sole shareholders of Beauvignot International, Inc. ("Beauvignot"), an importer and distributor of liquor in New York State. Defendant, Gilbert Rosenberg, owned all of the issued and outstanding shares of Beauvignot until March of 1980, and one-half of the shares since that time. After March of 1980, plaintiff, Steven Becker, owned the other half of the outstanding shares of Beauvignot. In March of 1986 the parties executed a letter agreement ("Agreement") whereby Becker resigned his corporate posts and sold his shares to Beauvignot for $600,000 and an additional purchase price that was to be based on the sales of a particular brand name of vodka. The total purchase price was to be paid over a period of five and one-half years. In conjunction with the Agreement, Rosenberg executed a guaranty of Beauvignot's obligations under the agreement.

Subsequent to the execution of the Agreement, Beauvignot filed an application for approval of change of shareholders with the State Liquor Authority ("SLA"), pursuant to the New York Alcoholic Beverage Control Act ("ABC") § 99–d. The application sought to remove Becker as a shareholder and leave Rosenberg as the sole shareholder and president. The SLA declined to approve the application, finding that the application did not "reflect a bona fide divestment of Becker's interest in the corporation." *See* Affidavit of Gilbert Rosenberg Ex. C. A second application listing additional directors was likewise apparently rejected.[1] A third application listing Becker as a shareholder was finally approved by the SLA.

Six months after the Agreement was executed, Becker sent a letter to Rosenberg

---

1. It is unclear whether the second application was formally rejected or whether the SLA informally notified Beauvignot's counsel that it would be rejected unless Becker was listed as a shareholder.

notifying him that Beauvignot was in default on the payments due under the Agreement. Shortly thereafter the instant action was commenced seeking enforcement of the Guaranty. The parties now seek orders granting summary judgment. The plaintiff seeks summary judgment on the ground that the guaranty is clear and unambiguous. The defendant contends that the Agreement is void because the SLA failed to approve the change of shareholders and therefore the guaranty would likewise not be binding.

## DISCUSSION

The dispositive issue with respect to this case is whether the failure of the SLA to approve the application for change of shareholders renders the Agreement unenforceable. If the Agreement cannot be enforced, then clearly the guaranty would likewise be unenforceable. The defendant contends that the Agreement is unenforceable because (1) due to the SLA's disapproval of the application, there was a failure of consideration; (2) the transaction cannot be consummated; and (3) the plaintiff breached the warranties and representations of the Agreement.

Section 110 of the ABC requires a corporate applicant for an SLA license to provide the names of its shareholders, officers, and directors. Section 99–d(2) of the ABC requires a corporate licensee to file an application for corporate change "[b]efore any corporate change in stockholders, stockholdings, officers or directors can be effectuated for purposes of [the ABC]." Plaintiff correctly points out that SLA approval was not an express condition of the Agreement. Nevertheless, Rosenberg contends that SLA approval was an implicit condition of the Agreement because without such approval the transfer could not be consummated.

Becker relies on *Monclova v. Arnett*, 3 N.Y.2d 33, 163 N.Y.S.2d 652, 143 N.E.2d 375 (Ct.App.1957) in arguing that failure to obtain SLA approval would not render an agreement to transfer stock ownership unenforceable. *Monclova* was an action to enforce a promise by defendant to transfer a one-half interest in a retail package liquor store in exchange for services performed by the plaintiff. The New York Court of Appeals held that the requirement of SLA approval "provides no basis for denying to plaintiff the relief sought." *Id.* 163 N.Y.S.2d at 654, 143 N.E.2d at 376. The Court reasoned that the plaintiff should be entitled to establish her property rights vis-a-vis the defendant, even if the SLA declined to approve the change. On remand, the supreme court held that if defendant could not consummate the transfer, he could nevertheless be required to respond in money damages for the failure to transfer the stock because the promise to transfer the interest was not unlawful. *Monclova v. Arnett*, 7 Misc.2d 357, 166 N.Y.S.2d 91, 95 (Sup.Ct. Kings Co.1957).

The ABC does not render illegal the making of any contract transferring shares. Section 99–d simply requires approval of any transfer before it will be recognized by the SLA for purposes of the ABC. As *Monclova* makes clear, however, the strictures of the ABC do not affect the establishment of rights between the parties. The net effect of the SLA's denial of approval was that the SLA would not recognize the transaction set forth in the Agreement as a complete divestiture of Becker's interest. Accordingly, the SLA would continue to treat Becker as shareholder. The more prudent course, which is recommended by the SLA, would have been to make SLA approval a condition of the Agreement. For whatever the reason, the Agreement is clear that such approval is not a condition precedent to performance by either party.

Rosenberg's argument that the Agreement lacks consideration must fail. The corporation is in possession of the shares. Mr. Becker has resigned his corporate posts. Whether or not the SLA continues to treat Becker as a shareholder, as between the parties Mr. Becker has forfeited his rights as a shareholder, officer and director. Presumably, after the payments under the Agreement are completed, and Becker no longer has a proprietary interest in the business of Beauvignot, the SLA would recognized a divestiture of Becker's interest. Therefore, Beauvignot received

what it bargained for in the Agreement, namely Becker's resignation and his shares, which were sufficient to support the promise to pay Becker the amounts in the Agreement.

Rosenberg's argument that Becker breached the warranties and representations of the Agreement also proves unpersuasive. The representations and warranties refer to Becker's right to transfer the shares. There were no restrictions on the shares themselves. The ABC does not restrict transfer of shares, it simply reserves the right of the SLA to approve corporate reorganizations for its own supervisory purposes, including listing the shareholders, officers, and directors for public inspection. This point is clear from *Monclova* wherein the Court of Appeals stated that the right to transfer shares was not impaired or rendered illegal by the ABC. The only limitation is whether or not the SLA will license a particular corporation. Therefore, Becker had the unfettered right to transfer his shares.

It is apparent that the ABC does not make the contract illegal. Becker also satisfied his obligations under the Agreement simultaneously with its execution by tendering his shares and resignation to the Beauvignot. In light of Becker's full performance, the absence of any conditions precedent, and the fact that the ABC does not make the contract illegal leads to the conclusion that Beauvignot was obligated to perform its end of the bargain. Because Beauvignot refused to perform, Rosenberg is bound by his clear and unambiguous guaranty to satisfy Beauvignot's obligations. Accordingly, Becker is entitled to summary judgment.

### CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is denied and plaintiff's motion is granted. Submit order and judgment.

SO ORDERED.

